Kathryn Lunn, #027619
DKL Law, PLLC
3145 E. Chandler Blvd., Suite 110-144
Phoenix, Arizona 85048
Telephone: (480) 540-1426
david@dkllawfirm.com

*Attorneys for Plaintiff*
*Elsie Keim*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELSIE KEIM, an individual, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | (Jury Trial Demanded) |
| CITY OF MESA, an Arizona municipality; and DOES 1 through 50, Black Corporations, Limited Liability Companies or Partnerships I-X, inclusive, | |
| Defendants. | |

For her Complaint against Defendant, Plaintiff, Elsie Keim, by and through undersigned counsel, alleges as follows:

### COMPLAINT

This is a lawsuit to remedy the shocking, outrageous and rampant practice of sexual harassment and abusive work environment at the City of Mesa. Female police officers and other City of Mesa employees are regularly confronted with the kind of sexual obscenities and lewd behavior such as that which was suffered by Ms. Keim and several of her co-workers. The City of Mesa has a long history of protecting the accused sexual harassers, while often subjecting the victims to prolonged

investigations while the abusers go about their daily business working next to and often supervising their victims, creating a hostile work environment.

## I.    Nature of this Lawsuit

1.    Plaintiff files this lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1982 ("1982 Claim"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq,* the Arizona Civil Rights Act, A.R.S. § 41-1463, for redress of injuries suffered due to a long-standing and pervasive practice of sex discrimination, sexual harassment, and the creating of a hostile work environment committed by the City of Mesa ("City" or "Defendant"), against Elsie Keim. The City displays deliberate indifference to employee's complaints of harassment by insufficiently and untimely investigating their claims and by protecting and promoting individuals who perpetrate such harassment.  These violations are systemic in nature, constituting a custom or policy of harassment that has occurred for years and continues to the present day. As a result, Ms. Keim seeks monetary damages from the City.

## II.    <u>Jurisdiction and Venue</u>

2.    The Court has subject matter jurisdiction over Causes of Action 1 and 2 because they arise under the United States Constitution and federal statues pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Causes of Action 3 pursuant to 28 U.S.C. § 1367 because those claims arise from a common set of operative facts and are so related to the claims in the action withing the original jurisdiction of this Court that they form the same case or controversy.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because all of the events or omissions giving rise to Plaintiff's claims occurred in this district.

4.    Plaintiff timely filed her charge of discrimination with the EEOC on or about December 23, 2019.

5.    On or about February 21, 2024, the EEOC issued a Notice of Right to Sue which was received by Ms. Keim on or about February 23, 2024.

////

III.   <u>**Factual Background**</u>

6.     The claims in this matter arise out of the City of Mesa's Police Sergeant Jeffery Neese's habitual sexual harassment of six female police officers and the spouse of a City of Mesa male police officer, and, more particularly, the City of Mesa's handling of those claims.

**A.     Elsie Keim**

7.     In the fall of 2015, Sgt. Neese took it upon himself to draw a picture of Elsie, Christen Rope and Elisha Gibbs. Sgt. Neese then sent the picture to the three individuals who he tried to depict.

8.     But now, each of the officers were drawn being nude.  After receiving the picture Elsie was deeply disturbed and disgusted.



**B.     Elisha Gibbs**

9.     Elisha was also the subject of Sgt. Neese's sexual harassment. Like Elsie, Elisha was also on Sgt. Neese's naked drawing.  Sgt. Neese continually harassed Elisha

over text messages.  Sgt. Neese would regularly send text messages to Elisha stating that he was pleasuring himself when he was thinking about her. Sgt. Neese sent a text to Elisha telling her that she is "SMOKIN HOT."  And then he went on to say, "I was home alone and was using up extra energy.  Haha.  Sorry.. too much."



10.     Even though Sgt. Neese acknowledged that he should not be sending Elisha sexual text messages, that did not deter him.  Sgt. Neese sent more text messages.  Sgt. Neese texted that he really did "think about you guys three times though.  I made a mess."



11. After Sgt. Neese explained how he pleasured himself three times thinking of Elisha, much to the relief of Elisha, Sgt. Neese changed the subject to a painting he was working on. But only for a moment. Relentlessly, Sgt. Neese's text messages become more disturbing.

12.     Yet again, after exposing another female officer to Sgt. Neese's outrageous sexual harassment, Sgt. Neese simply stated, "I give too many details. Sorry." Another hollow apology for inexcusable behavior.

**C.     Cindy Martinez**

13.     Sgt. Neese's known sexual harassment dates at least to 2014. One of the victims was Cindy Martinez. In the 2014 timeframe, Sgt. Neese began sending

inappropriate sexual messages to Cindy.  After Sgt. Neese dropped Cindy off at her house, Sgt. Neese sent her a text message stating, "I wish you would have invited me inside because I wanted a 'little more.'"  Cindy did not know how to respond so she simply ignored the text. But that was not the end.

14.     After that message was sent, Sgt. Neese told Cindy that he wanted her to ride on his motorcycle with Cindy in front, so he could be behind her.  That made Cindy feel awkward and uncomfortable.  Cindy was creeped out by Sgt. Neese's text and messages.

**D.     Christen Rope**

15.     Like Elsie and Elisha, Christen was also the subject of Sgt. Neese's nude drawing.   Christen was the victim of several of Sgt. Neese's vulgar and sexual harassing text messages.

**E.     Ashley Elliff**

16.     On or about August 9, 2017, Ashley became Sgt. Neese's next known victim. On that date, Sgt. Neese texted Ashley and said, "Haha.  Well you definitely entertained tonight being the last person I saw on the callout so thank you for that image! Haha."

17.     In shock, Ashley responded, "Do I want to know what entertaining yourself means."

18.     Ashley's fears were confirmed by Sgt. Neese's next text. "Haha.  I'm sure you know. Many people cross my mind while I'm entertaining. Haha."  Sgt. Neese tried to make light of this statements by texting that, "Haha. Sometimes I say too much. Haha. Just sayin."

19.     He went on to text, "Haha. I'm a sick man I guess. Sorry if I offend."

  

20.     Ashley was horrified. She had known Sgt. Neese for several years on a professional level. Ashley wondered why Sgt. Neese would be sending such inappropriate sexual text messages to her.

21.     She was embarrassed and offended.  Ashley did not know what to do; so she suppressed these hurtful text messages.

**F. The California Vacation**

22.     During the last week of July 2018, Elisha, Christine, Ashley and her husband, Tom, were on vacation together in California.

23.     At lunch on July 28th, Elisha mentioned that she had been receiving disturbing text messages from Sgt. Neese. Those text messages were shown to Ashley and Tom.

24.     After they read the text messages, Tom asked Ashely if she had received similar text messages from Sgt. Neese. Because she had been ashamed and embarrassed, Ashley had told no one.

25.     At that point, Ashley told Tom, Elisha and Christine about the deeply disturbing text messages that she received from Sgt. Neese.

26.     When Elisha, Christine and Ashley found out there were multiple victims, they agreed to reach out to two other female officers who they thought may have been victims of Sgt. Neese.

27.     The Monday after they returned to work, they reached out to Cindy and Elsie.

28.     They both confirmed that they too had been victims of Sgt. Neese's sexual harassment.

29.     As a result, the five officers decided to report Sgt. Neese's habitual sexual harassment to the City of Mesa Human Resources Department.

**G.     Human Resources October 30, 2018 Determination**

30.     A complaint against Sgt. Neese was filed in the Human Resources Department.

31.     After conducting an investigation, on or about October 30, 2018, a Determination of Findings – Sexual Harassment Investigation was issued.

32.     Human Resources sustained four allegations of misconduct by Sgt. Neese.  Sgt. Neese was too be penalized for his wrongful conduct.

33.     Neese was removed from the SWAT squad but remained a Sergeant.

34.     He was to receive 50 hours of unpaid leave.

35.     However, before the punishment was carried out, the Human Resources Department received another complaint against Sgt. Neese filed by officer Amanda Cook.

**F.     Amanda Cook**

36.     On March 31, 2018, Amanda became Sgt. Neese's next known victim.

37.     At that time, Amanda was in her second year as a new patrol officer for the Mesa Police Department.

38.     On a call that day, Amanda was at a scene with Sgt. Neese.  When Amanda had to contact Sgt. Neese as a follow-up to the call, she had to use her personal phone as the department had not issued her a business phone.

39.     At 9:56 p.m., Sgt. Neese sent Amanda a text message saying that he was texting from his personal phone.

40.     This happened 30 minutes after Amanda had to call Sgt. Neese.  The text was seemingly innocent.

41.     But then came the sexual harassment attacks.

42.     Within 1 minute after Amanda responded, "Sounds good no worries. Have a good night," Sgt. Neese texted, "You're the best. Thx for the hug the other day too. I loved it!!"

43.     Amanda was freaking out. She was still on duty and now dealing with this sexual predator.

44.     Not knowing what to say, Amanda responded, "anytime."  That should have been the end -- but of course it was not.

45.     Sgt. Neese responded, "Have me something more to think about in private moments."



46.     Now Amanda had no idea what to do. She was a new officer and one of her supervisors was sending sexually harassing text messages. The last thing she wanted to do was to offend Sgt. Neese as it could harm her career.

47.     As a result, she made small talk texting her responses, trying to make light of the situation. Sgt. Neese seized the opportunity.



48.     But that was not the end of it.



49.    Staring at her phone in disbelief, Amanda continued to work her patrol. Sgt. Neese persisted.

50.    He went as far as including emojis indicating that he was masturbating. Being afraid and unsure how to handle the situation.

51.    She felt uncomfortable, appalled, shocked, embarrassed, violated, offended and unsafe. Amanda could not take it anymore, so she just stopped responding to Sgt. Neese's text messages.

52.   At the time Sgt. Neese was sexual harassing Amanda, Amanda had no idea about the five other department complaints against Sgt. Neese for similar conduct.

53.   Amanda showed a couple of male officers the text messages sent by Sgt. Neese.

54.   They told Amanda that they knew about other officers who were subject of the same harassment.

55.   Amanda then contacted the Human Resources Department and notified it of her claim against Sgt. Neese.

**G.   Human Resources May 23, 2019, Determination**

56.   On or about May 23, 2019, the City of Mesa's Human Resources Department issued its finding that Sgt. Neese sent Amanda unwelcome and offensive text messages.

57.   Prior to making that determination, Amanda was subjected to four different interviews.

58.   Sgt. Neese was interviewed once.

59.   When Sgt. Neese was interviewed, he claimed he had no knowledge of the text messages that were sent to Amanda.

60.   Sgt. Neese even indicated that the messages were made up by someone else to set up Sgt. Neese.

61.   The investigator requested that Amanda's phone be sent to a forensics expert so her phone could be inspected and analyzed. Amanda quickly agreed, though Neese's phone was not inspected.

62.   As expected, the forensics expert found that Amanda had not fabricated the text messages and that the offensive text messages came from Sgt. Neese's phone.

**H.   Sexual Harassment of Member of General Public**

63.   Sgt. Neese's sexual harassment activities was not confined to female police officers.

64.    Brandon Hamilton is a City of Mesa police officer.  He and Sgt. Neese were Facebook friends.

65.    After Sgt. Neese had access to Brandon's connections, he was quick to sexually harass Brandon's wife, Cassie.

66.    Sgt. Neese seized the opportunity to contact Cassie through messenger to send her an unwanted sexual message.



67.    Now Sgt. Neese had put Brandon in a difficult position.

14

68.    Like the officers above, Sgt. Neese's position in the Mesa Police Department was superior to Brandon's.

69.    Brandon had to weigh the consequences of what could happen if he intervened.

70.    It took Brandon about a half of second to make that decision … he had to protect his wife.



71.    Brandon sent Sgt. Neese a message asking him to stop sending unwanted messages to Brandon's wife.

72.    Sgt. Neese, who had recently denied that he sent text messages to Amanda, likewise denied he sent the message to Brandon's wife.

73.    Sgt. Neese claimed that his Facebook had been hacked.

74.    Consistent with the findings in the May 23, 2019, either Sgt. Neese honestly had his Facebook account hacked and that someone randomly sent a message

to Cassie, or he fabricated a story about the hacked account to deflect his inappropriate behavior.

**I.    The Aftermath**

75.    Plaintiff believes that the City opted to combine the October 30, 2018 Determination with the May 23, 2019 Determination in order to decide the appropriate punishment for Sgt. Neese's habitual sexual misconduct.

76.    Because the Mesa Police Department has a zero tolerance policy for sexual misconduct, most believed the punishment would be harsh, even up to termination.

77.    Instead, the City decided to simply demote Sgt. Neese to a patrol officer, and allow him to work alongside his victims.

**J.    Other Incidents**

78.    The City's long-standing, custom or policy of allowing sexual harassment in the workplace and creating a hostile work environment for its employees is systemic in nature and not limited to the acts and omissions of Neese.

79.    The City's Public Information and Communication Director, Steve Wright, was found by the City to have violated the City's Workplace Harassment and Discrimination Policy.

80.    Several witnesses consistently stated that Wright's interactions were overly friendly and flirtatious, "creepy."

81.    Three female witnesses stated the Wright had "either touched them, blocked them, or looked at them in a manner perceived by them as flirtatious and inappropriate (undressing them with his eyes or giving them the 'once over')."

82.    Another "female employee who was not a witness in this investigation came forward on [redacted] own volition because [redacted] was uncomfortable witnessing Wright pinning another female employee with his body in the elevator on 3-1-18."

83.     According to the City's investigation, Wright's pattern of sexual harassment took place over years before the City's investigation's findings were published.

84.     Officer Drew Young violated the City's policies at least 12 times over 13 years only to get promoted.

85.     Included in his offenses, Young regularly spoke inappropriately about his female colleagues to his subordinates.

86.     Scott Callender, a former City of Mesa K9 officer, has been charged with assault arising from domestic violence.

87.     Callender's history of domestic violence goes back 25-years, a history that was well known to the City.

88.     Over 12-years ago, Callender, in a relationship with a City of Mesa female officer, held a gun to her chest during a domestic violence incident.

89.     After suffering severe abuse at the hands of Callender, she was in such despair that she actually wished Callender pulled the trigger.

90.     The City opened an investigation into allegations that Callender broke the ribs of a female Gilbert police officer who he was dating, and that Callender continued to track that Gilbert officer after she broke things off.

91.     The 2019 internal investigation by the City concluded that no charges should be filed against Callender due to the statute of limitation issues.

92.     Yet, the City allowed Callender to continue to be a K9 officer through 2020, after he retired because he was charged with two felonies.

93.     These are but a few examples of how the City has adopted a policy of supporting and promoting individuals who perpetrate habitual sexual harassment in the workplace, which created a hostile work environment for Plaintiff, and other officers who were similarly situated.

94.     Not only did the City fail to meaningfully and timely intervene into the ongoing offensive and abusive behavior of the perpetrator, the City treated Plaintiff's complaints with disdain, subjecting her daily to a hostile work environment.

95.     As illustrated by the examples above, sexualized comments, lewd remarks, and unwanted sexual advances are open, notorious and common place at the City.  The procedures to address and prevent such incidents are grossly inadequate.

96.     The City has acted with such deliberate indifference to the repeated complaints of sexual harassment that it has effectively created a policy and custom that complaints of harassment be ignored, insufficiently investigated, or even swept under the rug.

97.     The City attempts to stifle sexual harassment complaints by failing to put them in touch with counselors, failing to inform they of their rights or simply delaying any investigation, if at all, to the victim's complaints.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF § 1983 FIFTH AMENDMENT EQUAL PROTECTION

98.     Plaintiff incorporates paragraphs 1-97 above as if fully set forth herein.

99.     Defendant is a person within the meaning of 42 U.S.C. § 1983.

100.    At all times relevant to this Complaint, Defendant and its agents were acting under color of the laws, custom and usages of the State of Arizona within the meaning of 42 U.S.C. § 1983.

101.    Plaintiff is a member of a protected class.

102.    Defendant, through its supervisors, employees and agents, made unwelcome and unwanted sexual comments to Plaintiff because of her sex.

103.    Defendant's conduct constitutes sex discrimination in violation of Plaintiff's right to equal protection under the Fifth Amendment and the United States Constitution.

104.   Defendant had notice of its employees' wrongful conduct and, through their failure to remedy and prevent such violations of the law, have established an ongoing and pervasive sexual harassment as the custom and policy of the City.

105.   Defendant had notice and knowledge of the unlawful conduct and, through its failure to remedy and prevent such violations of the law, have demonstrated a deliberate indifference to the risk that such activity would result in constitutional violations.

106.   Defendant, implicitly or explicitly, with intent and knowledge of foreseeable consequences, condones, authorizes, or ratified the conduct of its employees, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated its own purported policies prohibiting sexual harassment in the workplace.

107.   Such actions were taken with the knowledge of the City Manager and the City Council. Sex discrimination through sexual harassment is the custom, usage and unwritten policy of the City, and the City has been deliberately indifferent to the unlawful and unconstitutional activity that occurs daily at the City.

108.   Defendant, acting under color of state law, violated the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION

**VIOLATION OF § 1982 FIFTH AMENDED EQUAL PROTECTION**

**(Hostile Work Environment)**

109.  Plaintiff incorporates paragraphs 1-108 above as if fully set forth herein.

110.  Defendant is a person within the meaning of 42 U.S.C. § 1983.

111.   At all times relevant to this Complaint, Defendant and its agents were acting under color of the laws, custom and usages of the State of Arizona within the meaning of 42 U.S.C. § 1983.

112.  Defendant, through its agents, supervisors, and employees, made unwelcome and unwanted sexual advances and comments to Plaintiff because of her

sex.  These sexual advances and comments subject Plaintiff to intimidation, ridicule and insult and were severe or pervasive that they altered the conditions of Plaintiff's working environment, constituting a hostile work environment.

113.  Defendant's conduct constitutes sex discrimination in violation of Plaintiff's right to equal protection under the Fifth Amendment and the United States Constitution.

114.  Defendant had notice of its employees' wrongful conduct and, through their failure to remedy and prevent such violations of the law, have established an ongoing and pervasive sexual harassment as the custom and policy of the City.

115.  Defendant had notice and knowledge of the unlawful conduct and, through its failure to remedy and prevent such violations of the law, has demonstrated a deliberate indifference to the risk that such activity would result in constitutional violations.

116.  Defendant, implicitly or explicitly, with intent and knowledge of foreseeable consequences, condones, authorized, or ratified the conduct of its employees, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated its own purported policies prohibiting sexual harassment in the workplace.

117.  Such actions were taken with the knowledge of the Mesa City Manager and the Mesa City Council. Sex discrimination through sexual harassment is the custom, usage and unwritten policy of the City, and the City has been deliberately indifferent to the unlawful and unconstitutional activity that occurs daily at the City.

118.  Defendant failed to take prompt and adequate remedial action. As a result, until Neese retired in December 2019, Plaintiff was forced to endure the hostile work environment fearing that she would come into contact with Neese while performing her work duties.

119.  Defendant, acting under color of state law, violated the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**

**VIOATION ARIZONA CIVIL RIGHTS ACT (A.R.S. § 41-1463)**

120.  Plaintiff incorporates paragraphs 1-119 above as if fully set forth herein.

121.  In Arizona, it is unlawful for an employer to discriminate against any individual on the basis of the individual's sex.

122.  Defendant, through its agents, supervisors, and employees, made unwelcome and unwanted sexual advances and comments to Plaintiff because of her sex.  These sexual advances and comments subject Plaintiff to intimidation, ridicule and insult and were severe or pervasive that they altered the conditions of Plaintiff's working environment, constituting a hostile work environment.

123.  Defendant had notice of its employees' wrongful conduct and, through their failure to remedy and prevent such violations of the law, have established an ongoing and pervasive sexual harassment as the custom and policy of the City.

124.  Defendant had notice and knowledge of the unlawful conduct and, through its failure to remedy and prevent such violations of the law, has demonstrated a deliberate indifference to the risk that such activity would result in constitutional violations.

125.  Defendant, implicitly or explicitly, with intent and knowledge of foreseeable consequences, condones, authorized, or ratified the conduct of its employees, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and systematically violated its own purported policies prohibiting sexual harassment in the workplace.

126.  Such actions were taken with the knowledge of the City Manager and the Mesa City Council. Sex discrimination through sexual harassment is the custom, usage and unwritten policy of the City, and the City has been deliberately indifferent to the unlawful and unconstitutional activity that occurs daily at the City.

127.  Defendant failed to take prompt and adequate remedial action. As a result, until Neese retired in December 2019, Plaintiff was forced to endure the hostile work

environment fearing that she would come into contact with Neese while performing her work duties.

128.   At the direct and proximate result of the City's wrongful conduct, Plaintiff has been damaged.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff request that this Court:

1. Award Plaintiff compensatory damages sufficient to redress the harms that she has suffered;

2. Award Plaintiff appropriate punitive damages;

3. Award Plaintiff reasonable attorneys' fees and costs;

4. Award any relief necessary to prevent future sexual harassment and ensure that sexual harassment complaints are timely, fully and fairly adjudicated; and

5. Award any other relief this Court may deem just and proper.

### **JURY DEMAND**

Plaintiff demands trial jury on all counts of her Complaint.


Dated this 21st day of May, 2024.

DKL Law, PLLC


By: */s/ Kathryn Lunn*
    Kathryn Lunn, #027619
    3145 E. Chandler Blvd., Suite 110-144
    Phoenix, AZ 85048
    T: (480) 540-1426
    david@dkllawfirm.com

    *Attorneys for Plaintiff, Elsie Keim*